CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/22/2017
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| VERONIQUE M. NZABANDORA, | ) | |
| Plaintiff, | ) | Civil Action No. 3:17cv00003 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| UNIVERSITY OF VIRGINIA | ) | |
| HEALTH SYSTEMS, *et al.*, | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Before the Court is Defendants' Motion for Leave to Amend Their Answer ("Motion to Amend"). ECF No. 56. Defendants, the Commonwealth of Virginia and Rectors and Visitors of the University of Virginia, seek to amend their Answer to assert the affirmative defense of after-acquired evidence of wrongdoing to limit the relief available to Plaintiff Veronique M. Nzabandora. Plaintiff opposes the Motion to Amend, arguing that Defendants have not shown good cause because the proposed affirmative defense is futile and Defendants did not act diligently in presenting the motion. Having considered the parties' briefs and oral arguments and the applicable law, I find that Defendants have shown good cause.

I. Procedural History

This action arises from Plaintiff's termination from her position at the University of Virginia Medical Center ("UVAMC") as a Registered Nurse. Asserting claims under Title VII for race and national origin discrimination, retaliation, and hostile work environment, Nzabandora filed the Complaint in the Eastern District of Virginia. Her case was transferred to this Court on January 17, 2017. ECF Nos. 27, 28. A Pretrial Order, which set forth the case schedule, was entered two days later, ECF No. 30, and a jury trial was scheduled to begin October 30, 2017. On June 22, Defendants filed the Motion to Amend, and Plaintiff filed a motion for summary judgment. Defendants filed their motion for summary judgment the following day. On August

1

18, the presiding District Judge held a hearing on the cross motions for summary judgment and the undersigned Magistrate Judge held a hearing on the Motion to Amend.

II. Discussion

Rule 15 of the Federal Rules of Civil Procedure provides that a party may seek leave from the court to amend its pleading, and the court should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). "Despite this general rule liberally allowing amendments," courts may deny leave to amend "if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (quoting *Laber*, 438 F.3d at 426).

In this case, the Court entered a scheduling order setting March 6, 2017, as the deadline for a party to move to amend the pleadings, absent a showing of good cause. *See* Pretrial Order 6. "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *accord Thorpe v. Mechanicsville Concrete, LLC*, No. 3:10cv797, 2011 WL 3820809, at *2 (E.D. Va. Aug. 29, 2011) ("If a proposed amendment would interfere with an established scheduling order, a court may grant the motion 'only for good cause and with the judge's consent.'") (citing Fed. R. Civ. P. 16(b)(4)). Accordingly, I will assess the Motion to Amend under the more stringent good cause standard.[1] *See Nourison*, 535 F.3d at 298; *Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 278 (E.D. Va.

---

[1] Although setting a deadline in a scheduling order for amending pleadings may create "tension within the Federal Rules of Civil Procedure between Rule 15(a) and 16(b)," scheduling orders provide district courts with an effective case management tool to manage heavy caseloads. *Nourison*, 535 F.3d at 298.

2

2008). "When considering whether a movant has shown good cause for an untimely amendment, a court should primarily consider the movant's diligence." *Thorpe*, 2011 WL 3820809, at *2 (citing *Montgomery v. Anne Arundel Cty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam)).

Here, Defendants seek leave to amend to assert an affirmative defense based on after-acquired evidence of wrongdoing. In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), the Supreme Court held that even assuming an employer terminated the plaintiff based on an unlawful motive, the employer's "after-acquired evidence of [the employee's] wrongdoing that would have led to termination on legitimate grounds had the employer known about it" could limit the employee's recovery. *Id.* at 359–62; *accord Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995). To invoke this defense, the employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362–63. A successful after-acquired evidence defense does not preclude the employee's recovery, but instead prohibits her from obtaining reinstatement or front pay and limits any award of backpay to the "date of the unlawful discharge to the date the new information was discovered." *Id*. at 362.

Defendants contend that Nzabandora submitted an inaccurate or incomplete application for employment at UVAMC in 2014. Defs.' Mem. of Law in Supp. of Defs.' Mot. for Leave to Amend Their Answer 2 ("Defs.' Br."), ECF No. 57. Specifically, Defendants assert that Nzabandora falsely claimed to have worked at the Washington Medical Center from September 2009 to February 2014 at an hourly rate of $38.74 and omitted that she worked for Our Lady of Peace from October 2013 to January 2014 and The Laurels of Charlottesville from May 2012 to October 2013 at hourly rates of $27.75 and $26.30, respectively. *Id.* at 2, 5–6. They contend that

Nzabandora's inaccurate or incomplete statements violated the conditions of her employment and UVAMC policy and, as such, her offer of employment would have been rescinded or she would have been terminated had they learned of these inaccurate statements at the time of her application or during her employment. *Id.* 1, 3, 5–6. Defendants have taken such actions where other candidates submitted inaccurate or incomplete applications. *Id.* at 6. In support of these allegations, Defendants provide declarations from Nzabandora's former and purported former employers; her federal tax returns and W-2s; her Conditions of Employment at UVAMC and related UVAMC Human Resources Policy; a declaration from Audris Veronica Ford, who is a human resources director at UVAMC;[2] and a declaration from Gretchen Marie Kaufman, who is a recruitment manager at UVAMC. ECF Nos. 57-1, 72-4, 72-5.

Defendants also detail their efforts to obtain this information about Nzabandora's past employment through discovery requests, depositions, and third party subpoenas. Defs.' Br. 6–7. By interrogatory, Defendants requested Plaintiff's previous sources of income, but, on March 9, 2017, Nzabandora objected and provided only her salary information at UVAMC. ECF No. 72-1 at 3–4. Defendants also requested Plaintiff's resume and all federal income tax information from 2004 to 2016. *Id.* at 7. Plaintiff responded without objection by directing Defendants to "see attached document production." *Id.* At her deposition on April 4, Nzabandora testified that she worked at "Washington Medical" after she left UVAMC in 2009 until she returned in 2014. Nzabandora Dep. 2–4, ECF No. 57-4. The day after this deposition, Defendants' counsel notified Plaintiff's counsel that he had not provided Nzabandora's W-2s and requested that he do so

---

[2] Nzabandora asserts that Ford's Declaration is improper because it is not based on her personal knowledge. Pl.'s Br. in Opp'n to Defs.' Mot. for Leave to Amend Their Answer 11–12 ("Pl.'s Br."). Ford stated, however, that she made the "declaration based upon personal knowledge and/or review of records kept in the regular and ordinary course of business as part of [her] job duties." Ford Decl. ¶ 2, ECF No. 57-1 at 1. The information in her declaration appears to fall within these boundaries and, as such, is appropriate.

4

promptly. ECF No. 72-2 at 3–5. On April 7, Defendants served a subpoena on the Medstar Washington Medical Center seeking documents concerning Plaintiff's alleged employment there. ECF No. 57-1 at 27–31. On May 15, Defendants served subpoenas on Our Lady of Peace and The Laurels of Charlottesville. ECF No. 57-1 at 35–38, 58–61. Those entities provided documents in response on May 31 and June 5. *See* ECF No. 57-1 at 33–34, 55–57; Thompson Decl. ¶ 7, ECF No. 72-2; Craig Decl. ¶ 3, ECF No. 72-4. Defendants continued to seek Plaintiff's W-2s through May, when they brought a discovery dispute to the Court for resolution. *See* ECF Nos. 52, 53. On May 24, the Court ordered Plaintiff to execute a tax form to submit to the Internal Revenue Service for her 2013 W-2. After gathering all of this information, Defendants drafted and filed their Motion to Amend.

In opposing the Motion to Amend, Nzabandora challenges the after-acquired evidence defense on its merits. She contends that her application conformed to instructions provided by Gretchen Kaufman and was accurate, or at least she did not intentionally provide inaccurate information. Pl.'s Br. 1–3, ECF No. 70; Nzabandora Decl., ECF No. 70-1; Wambura Decl., ECF No. 70-2. She further explains why she omitted information about her employment at the Laurels of Charlottesville and Our Lady of Peace. Pl.'s Br. 3. She also notes that Defendants received most of her federal income tax documents throughout the month of May, or about a month before they filed the Motion to Amend. *Id.* at 4; ECF Nos. 70-3 to 70-9.

Nzabandora does not contend that the Defendants' allegations related to the after-acquired evidence defense themselves are inadequate. Instead, she devotes much of her brief to presenting her own account of the circumstances surrounding her application for employment at UVAMC. *See* Pl. Br. 1–3, 8, 10–11. Her presentation of contrary evidence, however, is misplaced. When assessing a challenge on futility grounds, I must consider whether the

5

"proposed amendment sets forth facts and circumstances" that may establish the affirmative defense. *See Smithfield*, 254 F.R.D. at 280; *see also Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008) (finding a proposed amendment "may properly be found futile where, as a matter of law, it fails to state a claim" against the putative defendant). It does not involve weighing a plaintiff's case against the proposed defense. Because the proposed amendment concerns an affirmative defense, rather than a claim for relief asserted in a complaint, the Defendants' allegations must be contextually comprehensible, *Odyssey Imaging v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 725 (W.D. Va. 2010) (discussing motion to strike an affirmative defense), and they must "give the plaintiff adequate notice of the nature of the defense." *Cheney v. Vitro Am., Inc.*, No. 7:10cv246, 2010 U.S. Dist. LEXIS 130500, at *3 (W.D. Va. Dec. 9, 2010); *Warren v. Tri Tech Labs., Inc.*, No. 6:12cv46, 2013 U.S. Dist. LEXIS 69261, at *25–26 (W.D. Va. May 15, 2013).

Under this standard, the Defendants have alleged sufficient facts to state the affirmative defense. Although the Answer provides only a conclusory statement, "Defendants affirmatively assert the after-acquired evidence doctrine," ECF No. 57-5 at 16, in their briefing on the Motion to Amend, Defendants submitted declarations and documents in support of their allegations. These materials develop Defendants' allegations that Nzabandora provided inaccurate information in her application and that such action violated UVAMC policy and would have resulted in her termination. This information provides ample detail of the facts and circumstances of the affirmative defense. Accordingly, I find that the proposed amendment is not futile.

Nzabandora also questions the Defendants' diligence in presenting the Motion to Amend. She notes that from May 8 to May 25, she provided her federal income tax information for the years of 2013, 2015, and 2016. Pl.'s Br. 3–4. She argues that Defendants knew as early as May 8,

6

2017, that she worked at Our Lady of Peace and the Laurels of Charlottesville, but they did not file the Motion to Amend until June 22, near the deadline for filing dispositive motions and more than three months after the deadline established by the Pretrial Order to move to amend the pleadings. *Id.* at 6.

Nzabandora's argument is unpersuasive, and the delay in the filing of Defendants' Motion to Amend is primarily attributable to her own actions. Nzabandora was not forthcoming in responding to Defendants' written discovery or deposition questions concerning her former employment. Thus, Defendants had to resort to obtaining this information from third parties by subpoena. Unraveling Plaintiff's inaccurate statements and obtaining relevant evidence took several months. A day after Nzabandora's deposition on April 4, Defendants requested that she supplement her discovery responses concerning her past employment. On April 7, Defendants sent a subpoena to Medstar Washington Medical Center, and they received a response on May 24 indicating that Nzabandora had never worked there. Meanwhile on May 8, Defendants received Nzabandora's W-2 Detail Listing, ECF No. 57-1 at 14, showing that she worked at Our Lady of Peace and the Laurels of Charlottesville in 2013. Pl.'s Br. 6. A week later Defendants subpoenaed employment records from these entities, and they received responses on May 31 and June 5. Defendants' counsel then conferred with their clients, assembled the supporting documentation, and drafted the Motion to Amend over the next two weeks. Before filing the Motion to Amend, Defendants presented the substance of the motion to Nzabandora's counsel on June 16 and asked whether he opposed it. ECF No. 57-2. This act was entirely appropriate and professional. *See* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination

of every action and proceeding."). Plaintiff's Counsel did not respond, and Defendants filed the motion on June 22.

Plaintiff criticizes Defendants for not moving to amend sooner and argues that they should have done so after receiving her 2013 W-2 on May 8. Pl.'s Br. 6. This argument ignores the requirement under Rule 11 of the Federal Rules of Civil Procedure that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(4). Defendants quite simply had an obligation to investigate further. Moreover, Nzabandora's 2013 earnings are just a piece of the puzzle Defendants were assembling to bring the after-acquired evidence defense.

Considering that Plaintiff was not entirely forthcoming in her discovery responses and at her deposition and that Defendants pursued information relevant to their defense in a methodical and reasonable manner over two months before preparing and filing the Motion to Amend, I find that Defendants acted diligently. *See Smithfield*, 254 F.R.D. at 279.

Plaintiff also argues that allowing the amendment would cause her undue prejudice because discovery has closed. *See Smithfield*, 254 F.R.D. at 277 (observing that while "leave to amend ordinarily is to be liberally granted, amendments of pleadings are particularly inappropriate, *absent exceptional circumstances*, once discovery has closed" (citations omitted)). This concern can be addressed by reopening discovery, limited to the after-acquired evidence defense. *See Pennell v. Vacation Reservation Ctr., LLC*, No. 4:11cv53, 2011 U.S. Dist LEXIS 150763, at *10 (E.D. Va. Sept. 20, 2011).

Defendants oppose allowing Nzabandora additional discovery. They argue that she is responsible for the delay in bringing this defense. This argument is more properly considered in

assessing Defendants' diligence. *See Smithfield*, 254 F.R.D. at 279 (finding that plaintiff was not entirely forthcoming in discovery and "[t]hat conduct is relevant to [plaintiff's] ability to assert prejudice as a basis for denying leave to amend and militates against denying the Defendant's motion on the basis of prejudice"). Plaintiff's obfuscations during discovery, although bolstering Defendants' arguments that they acted diligently, do not operate to forfeit her opportunity to pursue discovery related to the Defendants' recently asserted affirmative defense.

III. Conclusion

Accordingly, for the reasons set forth herein, the Defendants' Motion to Amend, ECF No. 56, is GRANTED. The Clerk shall FILE the proposed amended answer. ECF No. 57-5. The parties will be allowed a reasonable period to conduct discovery related to the Defendants' after-acquired evidence defense. The undersigned Magistrate Judge will hold a conference call with the parties to discuss a discovery schedule and whether the trial date will need to be continued based on this additional period of discovery.

It is so ORDERED.

ENTER: September 22, 2017

Joel C. Hoppe
United States Magistrate Judge